Judge Owsley
delivered (he Opinion of the Court.
This was an action of detinue, for sundry slaves, brought by Tanner against Thomas and wife, in the circuit court. The declaration, as originally drawn, contains two counts, in each of which, Tanner claims the slaves as administrator of John Tanner deceased, under a grant of administration to him, with the will annexed, by the county court of Cape Girardeau, in the state of Missouri, in 1821, and in the first count, he declares upon the possession of the testator, John Tanner, but in the second count he declares upon his own possession as administrator Sic.
Non detinet was pleaded by Thomas and wife, and, the trial was had in the circuit court on an issue taken to that plea.
The jury found for Tanner, the slaves, Simon, of the value of $'J50, Bet, of the value of $600, Kate, of the value of §>050, and Amy of the value of $350, being part of those mentioned in the declara tion, and assessed his damages for the detention of them, to $820; but the jury tailed to find as to Iho other slaves named in the declaration.
The court rendered judgment in favor of Tan ner, for the slaves, Simen, Bet, Kate and Amy, if to be had, and if not to be hud, for seventeen huiub'ed and fifty dollars, their value, and also for three hundred and twenty dollars, the damages assessed by the jury, together with bis cost.
From that judgment, Thomas and wife appealed.
Various opinions were given by the court, on points of law, made in the course of trial; to each of which, exceptions were taken, and each will be noticed in tile order they occur in the record.
Decision of the court overruling objections to evidence cannot be assigned for error, uniess it appear the evidence was in fact given to the jury.
Transcript of the records of the court of probate of wills and testaments of the Missouri Territory, certified since the establishment of the state, (according to I ho act of Congress,) by (ho officers of tho connty court where' the record purports to be kept, is competent evidence, without proof of the laws of the state.
*53 A certified transcript of the will of John Tanner deceased, with the probate thereof, taken in July 1812, by the judge of probates, for the then district of Cape Girardeau, and territory of Louisiana, together with the letters of administration, with the will annexed afterwards, in 1821, granted by the county court, for the county of Cape Girardeau, state of Missouri, taken from the records in the office of that county court, was offered in evidence to the jury by Tanner, objected to by Thomas and wife, the objections overruleu hy the court, and the transcript admitted to be used as evidence. .After this decision by the court, and before the transcript was read to the jury, Thomas and wife moved the court to dismiss the cause became Tanner had not filed an authenticated copy of the order, granting letters of administration; hut before the court decided upon the motion, Tanner entered a nole prosequi to Üie second count of the declaration. Thomas and wife then asked for leave to file an additional plea, but the court refused to permit them to do so.
It will be perceived at the first glance, that it is altogether unnecessary for us to go into the inquiry, whether or not the court was correct in deciding the transcript from the records of the county court in Missouri to be admissible evidence; for it appears from the record, not to have been read to the jury, and if not used as evidence, Thomas and wife can have sustained no possible injury by the decision, even were it admitted to be erroneous.
Lest it should, however, he supposed, that we entertain the opinion that the court erred in its decision, we have thought proper to remark that no solid objection to the transcript being used as evidence is discerned. The authentication is in due and apt form, and lacks no essential ingredient to authorize copies from the records of the courts of other states to ¡>e mod as evidence. Tiie only possible objection, which could, with any plausibility be taken to it by the most ingenious counsel, consists in the failure of Tanner to prove, that hy the laws of Missouri, the records of chc former territorial judge of probates, for the dislricct of Cape Girarde.au, were, on the change of ¡sjovenunent, transferred to the clerk *54 of the county court, and that the clerk of that court was authorized to keep them. It may bo said, that the courts of this country cannot take judicial notice of the laws of other states, and as the authority to keep and give out copies of records, must be derived from the laws of the state' where the record is, it may be argued that without evidence going to prove, that by the laws of Missouri, the person by whom the copy is attested, had authority to keep the record, of which it purports to he a transcript, and to make out copies, the court should not have permitted it to be used as evidence; But the fallacy of the argument is at once perceived, when we advert to the consecpiences to which it would inevitably lead. The same argument that goes to show the necessity of proving ari authority by law to keep records, would also show the necessity of proving that the court of another slate, by whom a judgment is rendered, was authorized by the laws of that state, to give such a judgment, so that if the argument he sound, instead of admitting as evidence, copies from the records of the courts of other states, when authenticated according to the laws of the United States, we should in every case where such a copy is offered in evidence, have to require of the party before it is used, the almost impossible task, of not only producing every provision of the laws of the state from whence the. copy is brought, that may be necessary to prove the authority of the keeeper of the record, but also such as may be necessary to show the authority of the court, before whom, the proceedings designed to he proved by the record were had. An argument leading to such consequences, cannot he sustained by this court.
It is too late after the jury is sworn, to" move to dismiss the suit of anon-resident executor, because he had not filed his loiter testamentary.
With respect to the application of Thomas and wife, to dismiss the cause, because a copy of the order granting letters of administration to Tanner, was not filed, nothing need be said, after the remarks which have been already made. A regularly authenticated copy had been presented to the court as evidence, and whether filed or not, Thomas and wife had as full opportunity afforded them to inspect it, ; 3 if actually filed with the clerk. Besides the jury had been sworn before the applies- *55 lion was made to the court, and we apprehend, it was then too late for Thomas and wife to avail themselves of the provisions of the act of the legislature, which requires non-resident executors and administrators, to file their letters testamentary, or letters of administration, with the clerk of the court in which suit is brought by them.
No additional plea can be fileed af~ . tor the jury is sworn.
Plaintiff may enter a nolle prosequi as to one count, or any part of his action.
Laws of the Territory of Missouri, not inconsistent with the new government, were not changed by the establishment of the state. In the revolutions of governments by violence or otherwise, the laws of persons and tilings not inconsistent with the new constitution, remain as before, till altered by tho new public authority.
The same remark, as to the time, applies with equal force to the refusal of the court, to allow Thomas and wife to file an additional plea. Their application to do so, was made after the jury were sworn, and the trial was progressing, and of course, at a time when the court possessed no power to admit additional pleas,
The nole prosequi, which was entered by Tanner to his second count, is a matter of which Thomas and wife have no right to complain. The law gave Tanner that privilege; and it is one, that by no possibility could be useclto the prejudice of Thomas and wife, unless we suppose it a prejudice to them, for Tanner to discontinue his cause as to part of the Slaves claimed of them in his declaration.
Tanner also offered as evidence a copy of a law purporting to have been enacted in 1807, by the then Secretary of Louisiana, who, at the time, was exercising the government thereof, and the judges of the territory, certified by the secretary of the now state of Missouri, to be a true copy from the original, remaining on file in his office, together with the great seal of the state of Missouri thereto attached, to the reading of which as evidence to the jury, Thomas and wife objected, but their objection was overruled and the copy read.
In argument, no objection was pointed out, to the mode in which the copy is authenticated, and we have been unable to discover any to exist. But, admitting the authentication to be unexceptionable, and admitting the copy to be admissible to prove what the law of the territory was, it was contended that by the change of the territorial to a state government, the law of the territory ceased to have any operation, unless reenacted, or expressly adopted by the state, and as it does not appear, that the state *56 has ever acted upon the subject, it was insisted, that the. law of the territory can have no influence upon the rights derived by Tanner, under his grant of administration from the county court of Missouri, and that the copy ought, therefore, to have been excluded from the jury. The argument cannot, however, to its full extent, be admitted correct. It is admitted that by the change of government, some of the laws of the territory, must neecessarily, have ceased to have any operation. Of that description are such as were .adapted to the territorial form of government, and which are incompatible with the government as organized by tlie state. But it iá equally clear, that there are other laws of the territory, which would not, by the mere act of chuage in the government, cease to be law, and have no operation until re-enacted by the state. Among this latter class are those laws which are not incompatible with the new government, and which, at the time of the change of government, defined, regulated and controlled the rights of persons and things. Laws of this description, are by all civilized nations admitted to survive the total overthrow of government by violence and conquest, and until changed by the victor, are regarded as the rules of right aiid property between man and man. This rule of general law was admitted in argument, but its application to a government, organized by compact, as was that of the state of Missouri, was contested. But if, in its application to a government formed by force, the rule be a reasonable one, the reason derives additional strength when applied to a government formed’by compact. It is from a respectful regard for the rights, interests and feelings of the community that the rule has obtained in governments of the former sort, and we are admonished by-the sáme high regard for those rights, interests and feelings, not to apply a different rule to governments formed by compact. The will of the parties to the compact forms their only limit in making a government, and if so disposed, all existing laws might by them be swept away; but their intention to do so, is not to be presumed, from the mere act of forming a government, and until they actually do *57 so, those general laws to which we have adverted, must be understood to retain their vitality and force. Hence we conclude that the territorial law remained in force, notwithstanding the change of government, and that the court was correct in admitting the copy as evidence.
Sales under executions issued after tile defendant’s death, pass nothing.
Sale of a slave of the testator, under an execution against the executor de borm proimis, does not pass the title.
Evidence of another will of Tanner, recorded in Caldwell, offered and ‘ rejected.
The next question in order, involves the correctness of a decision given by the court in excluding the record of several judgments and decrees, together with the executions &c. which issued thereon, from being used as evidence before the jury. Those judgments &c. were offered as evidence by Thomas and wife, for the purpose of proving that since the death of John Tanner, part of the slaves named in the declaration, have been sold under the authority of law; hut upon looking into those judgments &c. and the executions; under which the slaves appear to have been sold, it is perfectly clear, that the right of Tanner as administrator, cannot have been in the slightest degree affected by the sales. All the executions issued upon judgments or decrees, rendered since the death of John Tanner, and neither of the executions purport to have been issued against the estate of the testator in the hands of Tanner to he ad? ministered.
One of the executions under which a sale of one of the slaves was made, it is true, purports to have issued against Tanner the present appellee, but it issued not against the estate of the testator in his hands to be administered, but against his estate in his personal right, and the doctrine is well settled that under such an execution the estate of the testator in his hands to be administered, could not be taken and sold. The objection to those records, &c. was therefore correctly sustained.
Thomas and wife next offered to read as evidence the records of two suits which were brought by the testator in his lifetime, and judgments therein recovered by lnm in the circuit court of Caldwell, but which were not satisfied until after his death, e rid also offered to read the copy of another will of the testator, taken from the records of the county cofrt of Caldwell, together' with the. copy of m *58 .order of thát courtiidmitting The-.will, to .record., but without producing.,any .record-evidence to show that any. person either as.executor or administrator; had taken upon themselves.the execution d£ the will by qualifying in -that court. To the admission of the records of the suits brought by the testator or the copy, of the will as evidence, Tanner objected, ¿and-his objection -was. sustained, by.the court.
County court of the county where judgments had been recovered by the deceased, have jurisdiction to hear his will , proved, and * grant letters : testamenfary. or adoiinistion.
Executors have no more right in .Kentucky, since the act of 1800, to main-1 tain an action to recover slaves devised by the testator to others, than to recover, land.
’Personal property, wherever •situated at the death of the owner, -passes according to ■tjie laws of country of hislast .resl enoe‘
*58 ' The ..object intended to be attained ■ by .introducing the records of tiróse suits.which had been.prosecuted by the testator, was to show that intuiting probate of the. will,«and. admitting it to record, the county court, of.-Caldwell, acted ^within the pale of its jurisdiction; and theiev.iden.ee was no ..doubt competent „for that purpose; .but when the jurisdiction of the-county court is.conceded, it is not perceived rhow the twill therein recorded, can effect the-right of Tanner under.his grant of administration by .the court .county,of Missouri to .recover the slaves.
’’•Were the right of ..Tanner, as administrator, to recover, the slaves to.be governed by the laws of . this country, exclusively, the will,-a copy of which from the re&prds.of the County .court of Caldwell, was offered.jmevidence, would no doubt J)&ve a conclusive operation against.lrim. For by the -act of,the Legislature of this • country, , which .passed in 1800, .slaves’ are v directed to pass ;by last wills and.testfiments.as lands,-,so th.at .as respects slaves devised by last .wills,-and testaments, .an executor .or administrator.,with the.will annexed, since the passage of that act,hasno more right of .suit than .they -have for lands; .and from ..the copy of the will which was/(fibred -.in evidence, all the slaves of the .testator appears to have„beenaciually devised.
But the act of this country cannot, vve,.appre-,;hend, have any influence-.upon the i. right of the ..slaves devised by that will. „The. proof.is .conclu-í-si ve, that atihedate of the/vi’ll as well as at the deatjh ■,of the testator, he not only resided in the then ter-..rilory of Louisiana, but that all of his slaves were then in that territory. The right to the slaves ; which passed by the will, must therefore be gov- *59 ¡asnee! by the' then. Territorial law, and not by the, act of the Legislature'of this State. So inflexible ihdeedis the rule with respect to personal property, that though not, in theicojnntry,,where died, the right,to it is always-regulated by.the of the country-wherehejlivedv Tested.by, the territorial law, the-rejected copy, of the,-will can, have no possible-influence upon.the?? question, of right. By that, law slaves are»personal;estate; and-, though, demised, the legal, right, vests in. the^exeuiitor,, or ad-nynistrator with the will annexed,, precisely asfthey would have done by the laws,of-this.* co,rtntry, had the act of 18Q0 to which reference, has.- been.- made never passed. In rejecting the records, and copy of the will, therefore the court, cannot have erred..
the. effect.-of-Idmnnlra-iron in this stats) on the "?í'\Tf,,a-l°r'’ istrator..
detinue by an d,'minis-tZlnTrit™ the posses-Pf tlle tfoftriaf’of ^ the general.- _ issue, the. fefters* ofSad-ministration need not be recover on a counton the possession of tratOT) proof of his having P°ssess-fed, is indispensable.
*59 What effect would have been produced upon ■right of Tanner if administration,had been, proved-to. ¡raye been granted by the county court of- Caleb. well', .with the will, annexed, to any other person, is< a,_question that w.e are not called upon by. tlie -proofv in the cayse.to. decide, and we - shall, therefore for-beai; expressing.any,- opinion upoa it. The only question that grows.out of the offer of Thomas and Wife to read the records and copy of the will; is the. one we have already noticed..
After all the evidence on, the part, of Tanner through, th,e court was moved by Thomas.and. wife' to.instruct the jury to ..find, as in case.of a nonsuit; but the court overruled the motion, and-refused the instruction, and we think„coyrectly-. "The not only conduced to prove, every, thing-necessary, to. establish Tanner’s rigid to recover, but it is of a character that could not be resisted-by. jury disposed to find according to the law of-.the.. case., and. the evidence. It is true, that in.tlie hill, oftexcep-, t.ións which was taken to the refusal of tiie court to: instruct the jury, it does not appear that the.letters’ pf administration which was granted to Tanner in the State,of.Missouri was used in evidence; nor are we of opinion that upon the issue joined it was necessary ior 1 anner to give them m evidence, ■As in the second count of his declaration^ Tanner declared upon his own possession as *60 it would no doubt oti tbc trial of the general issue; to that count-have been necessary to enable him to recover thereon, (as he is not proved to have ever had possession) to have produced the letters of administration granted to him; but we have seen that he had, before the motion for instructions was asked for, entered a noh proasqd to that count, so that the trial was confined exclusively to the issue On the first count, in which Tanner declared upon the possession of his testator, and the law is well settled, that on the tial of the general iesne to such a count, proof that the plaintiff is executor or administrator is not necessary. Floyd against Breckenridge, 4 Bibb, 14. Henderson’s administrator, vs. Clark, 4 Bibb, 391.
Motion for new Tfarrluad.
jDiversity on error between the effect of exceptions taken on the trial, and exceptions to decisions against a motion for it new trial moved for errors on the trial.
After the jury had found their verdict, Thomas and wife moved the court for a new trial on several grounds; but their motion was likowics overruled, dud all the evidence introduced by both parties ov. the trial spread upon the record by bill of exceptions.
Though several grounds were relied on by Thomas and wife, fora new trial, there is but one question of law besides those already noticed, worthy of any consideration in examining the correctness of the decision upon the application to set aside the vci-dict. The question is this: The court appears in the progress of the trial to have iciuml to instruri the jury, on (ho application of Tilomas and wife, that to enable Tanner to recover he must show title to the slaves in contest in the testator, and possession in the defendant;, and the question is, should a new trial be awarded because of that refusal to instruct the jury? If there bad been an exception to that refusal, of the court to instruct the jury, we should have had great difficulty in getting over a reversal of the cause. It was undoubtedly necessary far Tanner not only to prove that the slaves of right belonged to his testator, but also to authorize a recovery by him, it was incumbent on him to prove possession in the defendants in. that court. It was not however necessary that he should prove possession in the defendant at the time of trial, and *61 from the wording of the instructions which were refused by the court, we are left in some doubt whether or not it was designed to tie Tanner down to proof of possession in Thomas and wife at the time of trial. But be that as it 5 may, we are not of opinion tiiat the refusal to give instructions imposed upon the court the imperative duty to grant a new trial.
A verdict, should not he sot aside and anew trial granted, bo cause the court refused instructions which .might property have been given, where the verdict is in conformity to the law and evidence upon the whole case.
A verdict m pa^of’the** things demanded, is good for the. plaintiff, asió those found for him, and for the de-fendánt, as td the remain; der.
*61 ''¿-Applications for new trials are addressed to the sound legal discretion of the court, and should be disposed of not so much by strict and technical rules, as a due and proper regard to merits and justice of the case. Hence it is, that new trials have in some cases been refused, and verdicts which were in accordance to the justice of the case, permitted to stand, though errors were committed by the court, in giving positive instructions to the jury.
But the present casé is not so strong an one. Here there was barely a refusal to instruct, by the court. Here there was no active interference by the court, and the jury were left at liberty to follow the convictions of their own minds, upon the law and facts of the case. Here both right in the testator and possession in the defendants, were fully and clearly proved; and after verdict in support of that right, we cannot say the court below erred in not setting it aside, merely on the ground of a failure to tell the jury that they must find for the defendant, unless the plaintiff proved what he had fully proven.
The other points made on the motion for a new-trial, need no remarks from us. Except such as involve facts only, that are clearly against Thomas and Wife, and the facts were with the jury to weigh and decide, and we cannot say they were decided erroneously by them.
There remains \ o be noticed two other questions, one of which relates to the verdict of the jury, and the other to the judgment of the court thereon.
The first count to which the issue was tried, claims eight slaves, and the verdict is objected to because it makes no mention of any but the four *62 found for Thomas. The answer to this objection is found in the forty, second section of the act concerning civil proceedings, contained in 1 Dig. L. K. 254, It provides that, if on an issue concerning several things in one count in detinue, no verdict be found for part of them, it shall not be.error, but the plaintiff shall be barred of his title to the things omitted. The objection, to the. verdict cannot, therefore, be sustained.
A judgment for the aggregate value of several articles, in deti-nue, is erroneous; it should be for the separate value of etch, as ' found by the jury.
Mayes, far appellants; Crittenden, for appellee.
But the judgment was hot correctly entered upon the verdict. It, was correct to enter judgment in favor of Tanner, for-the -slaves found by the verdict for him, if to- be had;, but instead of rendering judgment for the, aggregate-value of the four .slaves, if they were- not to be. had,, the-judgment should have been for their respective- value severally. For this irregularity in entering- the. judgment, it.must be reversed, with cost, the- cause .remanded., to the court below, and judgment there entered in conformity with this opinion, for Tanner upon the verdict.